CRAIG P. FAGAN, State Bar No. 149556
**LAW OFFICES OF CRAIG P. FAGAN**
6320 Raydel Court
San Diego, CA 92120
Telephone: (619) 528-9600
Facsimile:   (619) 528-9675
email: cpfagan@faganlegal.com

Attorneys for all Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER JUDGE, an individual, J.M., a minor by and through her general guardian, AMBER JUDGE;  J.M., a minor by and through her general guardian, AMBER JUDGE;  J.M., a minor by and through her general guardian, AMBER JUDGE, | No. 2:16cv05902 CBM (KSx) |
| Plaintiffs, | **PLAINTIFFS' TRIAL BRIEF** |
| v. | Judge:         Hon. Karen L. Stevenson<br>Courtroom:   580<br>Trial Date:    March 6, 2018<br>Time:           10:00 a.m. |
| ECK PROPERTIES, LP, a California Limited Partnership, L'ABRI MANAGEMENT, INC., a California Corporation, and DOES 1 through 10, Inclusive, | |
| Defendants | |

**COME NOW** Plaintiffs Amber Judge, and minor plaintiffs J.M., J.M., and J.M. ("Plaintiffs") submit the following trial brief.

# I.

## TABLE OF CONTENTS

TABLE OF CONTENTS......................................................................................... I

I.    BACKGROUND.......................................................................................... 1

II.   STATEMENT OF THE FACTS.................................................................... 2

III.  POINTS AND AUTHORITIES..................................................................... 4

**I.    STATEMENTS MADE BY DEFENDANT INDICATES PREFERENCES, LIMITATIONS, OR DISCRIMINATION BASED ON FAMILIAL STATUS, AS SUCH, THOSE STATEMENTS VIOLATE 42 U.S.C. §3604(c) AS A MATTER OF LAW**........................................................................................... 4

**II.   DEFENDANT HAS DISCRIMINATED AGAINST PLAINTIFF IN THE TERMS, CONDITIONS, AND PRIVILEGES OF THE RENTAL OF A DWELLING BECAUSE OF FAMILIAL STATUS** .................................................................. 8

**III**.  **DEFENDANT HAS MADE STATEMENTS WITH RESPECT TO THE RENTAL OF A DWELLING THAT INDICATE DISCRIMINATION BASED ON FAMILIAL STATUS** ...................................................................... 8

**IV.   DISCRIMINATION AGAINST OTHER TENANTS IS RELEVANT AS DEFENDANT'S OPERATION AS A WHOLE MUST BE CONSIDERED** ............. 9

**V.    FAMILIAL STATUS NEED NOT BE THE ONLY REASON FOR DEFENDANT'S ACTIONS** ........................................................................ 11

**I.**

**BACKGROUND**

The purpose of the Fair Housing Act is to provide for fair housing throughout the United States. 42 U.S.C. §3601.  The Fair Housing Act implements the Congressional policy favoring the achievement of integrated living patterns.  *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211, 93 S.Ct. 364, 367 (1972).  The Supreme Court has stated that the Fair Housing Act is to be construed generously to ensure the prompt and effective elimination of all traces of discrimination in the housing field.  *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 211-212, 93 S.Ct. at 367-368 (1972).  *See, also, Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

In 1988, Congress amended the Fair Housing Act to prohibit discrimination against families with children.[1]  Congress took this step based on a series of studies demonstrating that discrimination against American families was a widespread and growing phenomenon.[2]  From these studies powerful evidence emerged indicating that restrictive practices were forcing American families to live in less desirable dwellings.[3]

The regulations issued by the Department of Housing and Urban Development implementing the 1988 amendments to the Fair Housing Act make clear that Congress intended to give families with children the same protections that had been provided since the Act's adoption in 1968 to individuals on the basis of race, sex, national origin, and religion:

> [T]he legislative history of the Fair Housing Act and the development of fair
>
> housing law . . . support the position that . . . families with children must be
>
> provided the same protections as other classes of persons. . . . For example,

---

[1] The Fair Housing Act of 1988, as amended, went into effect on March 12, 1989.

[2] H. Rep. No. 711, 100th Cong., 2d Sess., 19-21 (1988) (hereinafter "House Report"); R. Schwemm, *Housing Discrimination* §11.6(1) (1991).

[3] House Report at 21; R. Schwemm at 11-66.  134 Cong. Rec. H4688 (June 23, 1988) (remarks of Rep. Dellums).

1    "dual housing" facilities segregated by race, color or religion clearly would

2    violate the . . . Act.  Similarly, . . . it is unlawful for a housing facility to

3    segregate because of familial status.  24 C.F.R. Ch. 1, Subch. A., App. I at

4    691 (1991); *see also id.* at 714.

5    This conclusion is fully consistent with the statutory language of the 1988 amendments, which

6    expressly incorporates families with children as a protected class in each and every substantive provision

7    where the other traditional protected classes appear.[4]  This Court has ample guidance in applying the Fair

8    Housing Act in this case.  Over forty years of litigation under the Fair Housing Act involving traditional

9    protected groups has generated extensive case law governing the legal questions at issue here.

10    In a nutshell, Plaintiffs  have been subjected to unlawful, discriminatory rules based on familial

11    status during their tenancy at the Stonewood Apartments located at 16850 Downey Avenue, Paramount,

12    CA  (hereinafter "the Subject Property" or "the complex"). These actions violated state and federal fair

13    housing laws, as well as the Unruh Civil Rights Act.

14

15    **II.**

16    **STATEMENT OF THE FACTS**

17

18    Defendants have enforced house rules at the Stonewood Apartments located at 16850 Downey

19    Avenue, Paramount, CA (hereinafter "the Subject Property" or "the complex") which prohibit children from

20    playing outside.  These rules are illegal.

21    In August 2014, Plaintiff Amber Judge signed a lease with Defendant ECK Properties, LP, to lease

22    an apartment at the Subject Property, along with her minor children J.M., J.M., and J.M.  The Subject

23    Property has been owned by Defendant ECK and managed by L'Abri Management, Inc. at all times since

24    Plaintiffs moved into the Subject Property in 2014.

25    Defendant L'Abri is no stranger to discrimination lawsuits.  This is the third time, alone, that

26

27    [4]    *See, e.g.,* 42 U.S.C. §§3604(a)-(e).

28

1   Plaintiffs' counsel has filed a housing discrimination case against Defendant L'Abri Management, Inc.  On

2   top of that, L'Abri was also previously sued for housing discrimination by two other firms in separate

3   actions, Brancart & Brancart and the Law Offices of Stuart E. Fagan.  In short, L'Abri has a history of

4   discriminating against families with children and has done nothing to curtail such illegal conduct.[5]

5        Shortly after moving in, Ms. Judge was advised by the resident managers Ramiro Almeida and

6   Susan Almeida, that children were not allowed to play in the common areas.  Ms. Judge has testified that

7   she and her mother, Nadine Christian (who babysat for her on a near-daily basis), were repeatedly informed

8   by the managers that children were not allowed to play outside.  This is unfortunate, as there are plenty of

9   safe places for children to play in the common areas.

10      Ms. Judge has been admonished for her children riding tricycles, standing outside playing, playing

11  with squirt guns, playing in the grass, playing tag, or just being kids.  Nothing is allowed.  To make matters

12  worse, there is no air conditioning in the units, so that heat can get stiflingly hot during the summer, yet the

13  children cannot go outside to play.

14      Defendants will argue that Ms. Christian was verbally abusive toward her grandchildren when she

15  babysat them.   Even if this were true, it would not negate the discrimination in this case.  Although Ms.

16  Christian denies that she was verbally abusive toward her grandchildren, she does not deny that she

17  occasionally would yell at them out of frustration.  The critical point is that even Defendants (unwittingly)

18  acknowledge that Ms. Christian was regularly upset because the children could not play outside, by

19  producing complaints from tenants about the children and Ms. Christian being noisy inside their unit.  The

20  issue related to Ms. Christian, and whether she was a bad grandmother, is not relevant to anything, other

21  than to support the claim that the children were not allowed outside.

22      Tenant Deborah Haugaerook will testify in support of Plaintiffs.  Ms. Haugaerook has lived at the

23  property for three years.  She testified that the resident manager, Susan Almeida, unquestionably informed

24  her that children were not allowed to play outside at the complex.  When pressed by Defense counsel,

25

26

27

[5]     The previous cases against L'Abri were *Pouncie v. Kimberly Thor, LLC (*SACV12-1663-CJC (ANx); *Hoffman v. LMI* (8:03-cv-00968), *Santos v. LMI* (2:10-cv-01812), and  *Kroschuk v. LMI* (06-cv-07796)

28

1  Steven Byrne, about whether she had been advised that "children" could not play outside or whether she

2  had simply been told that "nobody" could play outside, she confirmed that "children" were specifically

3  identified as the group that could not play outside.

4  As for the resident manager Susan Almeida, she testified that there is no fair housing poster onsite

5  at the complex. A failure to display a fair housing poster shall be deemed prima facie evidence of a

6  discriminatory housing practice. 24 C.F.R. §110.30. To make matters worse for Defendants, Ms. Almeida

7  freely admitted that she did not allow playing outside. She claims that this rule applied uniformly to all

8  tenants, but circumstances suggest otherwise. Ms. Almeida confirmed that she repeatedly advised Ms.

9  Judge that her children could not be outside - even if supervised - due to "safety" issues. The "safety" issue

10  she identified was "sprinklers sticking out sometimes" and that they might fall on the concrete. Ms.

11  Almeida admits that this rule was so strictly enforced, that she wouldn't even let someone play with Barbie

12  dolls or Hot Wheels outside.

13  In short, Defendants were trying to exclude children from common areas. A clear violation of fair

14  housing laws.

15

16  **II.**

17  **POINTS AND AUTHORITIES**

18

19  **I.   STATEMENTS MADE BY DEFENDANT INDICATE PREFERENCES,**

20  **LIMITATIONS, OR DISCRIMINATION BASED ON FAMILIAL STATUS, AS**

21  **SUCH, THOSE STATEMENTS VIOLATE 42 U.S.C. §3604(c) AS A MATTER OF**

22  **LAW**

23  Plaintiffs allege violations of two separate provisions of the Fair Housing Act.[6] Each basis will be

24

25  [6]California's Fair Employment and Housing Act ("FEHA"), which is codified at Cal. Gov. Code §12955 et seq., is substantially equivalent to the Fair Housing Act. *Anderson v. Foley*, 1999 CAFEHC

26  LEXIS 5, 25-26 (1999). As such, only the Fair Housing Act will be addressed herein. In short, if defendants' actions violate the federal Fair Housing Act, then, by definition, they also violate California's

27  FEHA. "FEHA in the housing area is thus intended to conform to the general requirements of federal

28

1    separately addressed below.

2         42 U.S.C. §3604(c) asserts that the following conduct is illegal:

3              "To make, print, or publish, or cause to be made, printed, or published any notice,

4              statement, or advertisement, with respect to the sale or rental of a dwelling that

5              indicates any preference, limitation, or discrimination based on . . . familial status,

6              . . . or an intention to make any such preference, limitation, or discrimination."

7         Section 3604(c) claims do not undergo a burden-shifting analysis, nor does it require a showing of

8    discriminatory intent.   *Pack v. Washington II*, 689 F.Supp. 2d 1237, 1245 (E.D. Cal. 2009).

9    "Discriminatory preference, rather than an outright ban, is the basis for a §3604(c) violation." *Id.*   Under

10   3604(c), the question is whether the statement at issue would suggest an improper preference to "an

11   ordinary reader or listener." *Id.*   The ordinary reader or listener "is neither the most suspicious nor the most

12   insensitive of our citizenry." *Ragin v. New York Times Co.*, 923 F.2d 995, 1002 (2d Cir. 1991).   *Fair*

13   *Housing Congress v. Weber,* 993 F.Supp. 1288, 1290 (C.D. Cal. 1997) (summary judgment granted as to

14   discriminatory statements in rules and regulations).  *Mathews v. Arrow Wood LLC,* 2009 WL 8659593

15   (C.D. CA. 2009)(summary judgment granted as to discriminatory statements in rules and regulations).

16        Herein, Defendants have enforced rules at the complex which prohibit children from playing outside

17   in the common areas, a direct violation of 42 U.S.C. §3604(c).

18        The purpose of §3604(c) was to change the way housing providers communicated with the public.

19   "Congress was aware that [Title VIII] would have a very broad reach, and indeed the legislation was seen

20   as an attempt to alter the whole character of the housing market." *Mayers v. Ridley*, 465 F.2d 630, 652

21   (D.D.C. 1972).  Congress, briefly stated, sought to eliminate all indications of preference, limitation, and

22   discrimination based upon protected class status. *Llanos v. Estate of Anthony Coehlo*, 24 F.Supp.2d 1052,

23   1056 (E.D. Cal. 1998).  "[P]laintiff need not show defendant's intent to discriminate based on familial

24   status." *Fair Housing Council of Orange County, Inc. v. Ayres,* 855 F. Supp. 315, 318 (C.D. Cal. 1994)

25   _____

26   law in the area and may provide greater protection against discrimination." *Brown v. Smith,* 55
     Cal.App.45h 767, 780 (1997); *cf., Inland Mediation Board v. City of Pomona*, 158 F.Supp.2d 1120, 1150
27   (C.D. Cal. 2001) ("Generally, California explicitly prohibits its fair housing laws from being construed to
     provide fewer rights or remedies than the FHA and its implementing regulations.").

28

1   (citing *Keith v. Volpe,* 858 F.2d 467 (9ᵗʰ Cir. 1988) (proof of intent is <u>not</u> required to establish a violation).

2   In *Iniestra v. Cliff Warren Investments, Inc.,* 886 F.Supp.2d 1161 (C.D. Calif. 2012), the court

3   granted partial summary judgment on a similar 42 U.S.C. 3604(c) claim.  Therein, the court found that a

4   rule which stated "Children on the premises are to be supervised by a responsible adult at all times" resulted

5   in "explicit" discrimination against children  in violation of 42 U.S.C. §3604(c).    *Id.* at 1166.  The court

6   further held that a memo sent to tenants (Entitled "Unsupervised Children Memo"), which required children

7   under 10-years-old to be supervised, was likewise facially discriminatory.  *Id.* at 1168.  The court found

8   that since the rules "enforce some limitation on the children's use of apartment facilities" then such rules

9   resulted in a violation of 42 U.S.C. §3604(b).[7]  *Id.*  at 1169.

10   In *Pack, supra,* the court found that it violated 42 U.S.C. §3604(c) to have a rule which required

11   the supervision of children 10-and-under in the common area. *Id.* at 1244 & 1245.  This comports with

12   the holding in  *Llanos v. Coehlo*, 24 F.Supp.2d 1052, 1060 (E.D. Cal. 1998), which found, "[A]s a general

13   rule, safety judgments are for informed parents to make, not landlords."

14   In *Blomgren v. Ogle*, 850 F.Supp. 1427 (E.D. Wash. 1993) the court held that a written apartment

15   rule stating "no children (other than visiting) or pets allowed in the apartments" violated [§3604(c)] as a

16   matter of law, although the plaintiff/tenant testified that she had never seen the rule and defendants testified

17   the rule was never enforced.  The *Blomgren* court granted summary adjudication in favor of the plaintiff

18   on the [§3604(c)] issue, holding:

19           "[A] violation occurs . . . when the communication implies

20           an obvious discriminatory preference.  Alternatively, intent

21           to discriminate also need not be proved to establish violation

22           where the ordinary reasonable reader infers the particular

23           discriminatory preference." *Blomgren*, 850 F.Supp. at 1440.

24   In *Fair Housing Congress v. Weber*, 993 F.Supp. 1286 (C.D. Cal. 1997) the court held that a written

25

26   [7]    The court in *Iniestra* found that a violation of Federal Fair Housing claims was, likewise, a violation of California FEHA claims simultaneously brought.  *Id.* ("Because FEHA is based on the Fair Housing Act, liability under the Fair Housing Act also supports liability under FEHA" (citation omitted)).

27

28

1 | apartment rule stating "Children will not be allowed to play or run around inside the building area at any

2 | time because of disturbance to other tenants or damage to building property" violated §3604(b) and

3 | §3604(c) as a matter of law, finding:

4 |      "The first sentence of [the rule] is clearly a 'limitation' on the use by children

5 |      tenants of the apartment facilities, and an ordinary reader of the first

6 |      sentence of [the rule] could not reasonably interpret it otherwise." *Fair*

7 |      *Housing Congress,* 993 F.Supp. at 1291.

8 |      Any concerns about liability or noise by Defendant does not justify the actions it took, herein.  In

9 | *Bischoff v. Brittain*, 183 F. Supp. 3d 1080 (E.D. CA 2016), the court rejected an argument from the landlord

10 | that noise and liability concerns justified rules that limited the right of children to use common areas. The

11 | Court held:

12 |      "In their opposition, defendants contend the guidelines are justified to protect the safety and

13 |      well-being of young children, to limit noise and disturbances to other residents, and to protect

14 |      themselves from liability if the children are injured. Of these asserted justifications, only the first

15 |      is permissible under the *Community House* standard; the other two justifications do not respond to

16 |      legitimate safety concerns, and defendants have not shown that they otherwise benefit families with

17 |      young children."

18 |      As the court in *Mathews v. Arrow Wood, LLC.,* 2009 WL 8659593 (C.D. Cal. 2009), poignantly

19 | noted:

20 |      "Concerns that children will get hurt while playing outside, be it nicks, scratches, bumps or bruises,

21 |      have been concerns dogging parents since the dawn of time.  Were such ever-present, generalized

22 |      concerns deemed sufficient in and of themselves to justify outdoor use restrictions to an apartment

23 |      complex, there would be little place left that such a rule would not be considered valid.   In short,

24 |      the mantra of child safety cannot and is not sufficient to justify a restriction absent some showing

25 |      that the particular concern captured by this rationale has a concrete connection to the particular area

26 |      and activity sought to be restricted." *Id.* at 14-15.

27 |      Herein, Defendants' refusal to allow children to play in the common areas expressly targeted

28 |

children and, thereby, suggest a limitation upon the use of the premises by tenant children, which an ordinary listener could not reasonably interpret it otherwise.  Consequently, these rules violate §3604(c).

## II.    DEFENDANT HAS DISCRIMINATED AGAINST PLAINTIFF IN THE TERMS, CONDITIONS, AND PRIVILEGES OF THE RENTAL OF A DWELLING BECAUSE OF FAMILIAL STATUS

Title VIII of the Civil Rights Act of 1968, 42 U.S.C. 3601, *et seq.*, as amended, also known as the Fair Housing Act, prohibits familial status discrimination in the "terms, conditions, or privileges of . . . rental . . . of a dwelling or in the provision of services or facilities therewith." 42 U.S.C. §3604(b).

Defendants' rules which prohibited children from playing in the common areas expressly discriminated against families with children.

To establish a *prima facie* violation of §3604(b), plaintiffs must show that: 1) plaintiffs' rights are protected under the Fair Housing Act; and 2) as a result of the defendants' discriminatory conduct, plaintiffs have suffered distinct and palpable injuries.  *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999).  A plaintiff may bring a §3604(b) claim by alleging disparate impact or disparate treatment theories.  *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999).  *Id.* at 1051  Herein, Plaintiffs have alleged a §3604(b) claim under both disparate impact and disparate treatment theories.  Defendant discriminated against Plaintiffs in the terms, conditions, and privileges of renting a dwelling at the Subject Property.

## III.    DEFENDANT HAS MADE STATEMENTS WITH RESPECT TO THE RENTAL OF A DWELLING THAT INDICATE DISCRIMINATION BASED ON FAMILIAL STATUS

The Fair Housing Act also makes it unlawful for owners or their agents to make any statement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status or an intention to make any such preference, limitation, or discrimination.  42 U.S.C. § 3604(c); 24 C.F.R. 100.50(b)(4).  Furthermore, the Department of Housing and Urban Development ("HUD") states that 42 U.S.C. §3604(c) applies to all oral notices or statements by a person engaged in the

rental of a dwelling.  24 C.F.R. 100.75(b).  See also *Soules v. HUD,* 967 F.2d 817, 824 (2d Cir. 1992) ("Openly discriminatory oral statements merit 'straightforward treatment.'").

The standard for determining whether a given statement violates §3604(c) is whether the statement suggests a preference (or limitation or discrimination) to the ordinary reader or listener.  *U.S. v. Hunter,* 459 F.2d 205, 215 (4th Cir.), cert. denied, 409 U.S. 934, 34 L. Ed. 2d 189, 93 S. Ct. 235 (1972), *Ragin v. New York Times Co.,* 923 F.2d 995, 999-1000 (2d Cir.), cert. denied, 502 U.S. 821, 116 L. Ed. 2d 54, 112 S. Ct. 81 (1991); *Fair Housing Congress v. Weber,* 993 F.Supp. 1288, 1290 (C.D. Cal. 1997).  **Intent is not a necessary element of a §3604(c) claim.**  *Jancik v. HUD,* 44 F.3d 553, 556 (7th Cir. 1995); *Llanos v. Estate of Anthony Coehlo*, 24 F.Supp.2d 1052, 1056 (E.D. Cal. 1998).

In short, the overwhelming evidence in this case is that the rules in dispute were disproportionately enforced against families with children, a direct violation of §3604(b) & (c).

## IV.    DISCRIMINATION AGAINST OTHER TENANTS IS RELEVANT AS DEFENDANT'S OPERATION AS A WHOLE MUST BE CONSIDERED

The testimony of any witness to acts of discrimination are admissible, even if such acts took place against tenants who are not parties to the case.  Simply put, case law holds that Defendants' operation "as a whole" must be reviewed, to determine if Defendants operate its complex in a discriminatory manner.

In *Gonzales v. Valenzuela*, 2002 WL 34700599 [2002 U.S.Dist. LEXIS 28678](USDC Central District Oct 2002), the court expressly allowed testimony from witnesses who had separately been treated in a discriminatory manner.  The *Gonzales* court held,  "The Court denies Defendant's Motion to exclude the testimony of tenants at other properties. Plaintiffs are entitled to show Defendant had a pattern of similarly discriminating against other tenants. See *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (proving isolated or sporadic discriminatory acts by employer is insufficient to establish a prima facie case of a pattern or practice of discrimination); *Marable v. H. Walker & Assoc., et al.*, 644 F.2d 390, 396 (5th Cir.1981) (holding evidence of landlord's pattern of accepting white applicants established landlord's disparate treatment of white and black applicants); *Obrey v. Johnson,* 400 F.3d 691, 697 (9th Cir. 2005)("We have observed that "evidence that the defendant has

1  made disparaging remarks about the class of persons to which plaintiff belongs  may be introduced to show

2  that the defendant harbors prejudice toward that group." Lam v. Univ. of Haw., 164 F.3d 1186, 1188 (9th

3  Cir. 1999) (internal quotation marks omitted). It tends to show "a defendant's discriminatory state of mind."

4  Id.").

5       The *Gonzales* court, *supra,* also held, "Defendant argues that the testimony should be limited to

6  residents of the subject property only. However, Defendant's behavior, whether at this building or others

7  he owns, is relevant to whether Defendant has a pattern of engaging in housing discrimination. See

8  Teamsters v. United States, 431 U.S. 324, 336, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)(recognizing that

9  in a pattern and practice case, plaintiffs must establish by a preponderance of the evidence that

10  "discrimination was the company's standard operating procedure—the regular rather than the unusual

11  practice."). Evidence of discrimination at other buildings is certainly likely to be weaker than evidence

12  related to the subject property, but the Court finds it admissible." *Id.*

13       Moreover, the Court of Appeals for the Ninth Circuit has held "that bigoted remarks by a member

14  of senior management may tend to show discrimination, even if directed at someone other than the

15  plaintiff," and "even if several years old." *Metoyer v. Chassman*, 504 F.3d 919, 937 (9th Cir. 2007)

16  (citations omitted). "It is clear that an employer's conduct tending to demonstrate hostility towards a certain

17  group is both relevant and admissible where the employer's general hostility towards that group is the true

18  reason behind firing an employee who is a member of that group." *Heyne v. Caruso*, 69 F.3d 1475, 1479

19  (9th Cir. 1995) (citation omitted).[8]

20       As countless courts have recognized, "[c]omparative information . . . is absolutely essential to a

21  determination of discrimination." *E.E.O.C. v. Ford Motor Credit Corp.,* 26 F.3d 44, 47 (6th Cir. 1994);

22  *United States v. Landsowne Swimming Club*, 894 F.2d 83, 89 n. 10 (3d. Circ. 1990)(holding that in order

23  to determine whether a pattern or practice exists, the court must consider the defendant's operations as a

24

25       [8]In examining discrimination issues under the Fair Housing Act, courts frequently draw from employment

26  discrimination analysis. *See Gamble v. City of Escondido,* 104 F.3d 300, 304 (9th Cir.1997) ("We apply Title VII
    discrimination analysis in examining Fair Housing Act ('FHA') discrimination claims. 'Most courts applying the

27  FHA, as amended by the [Fair Housing Act Amendments], have analogized it to Title VII of the Civil Rights Act of
    1964, 42 U.S.C. §§ 2000e *et seq. ,* which prohibits discrimination in employment.'"

28

whole); *United States v. Dillon Supply Co,* 429 F.2d 800, 804 (4th Cir. 1970)("The district court was, therefore, in error in limiting Title VII to present specific acts of racial discrimination. It should have considered any past specific or general act, practice, policy or pattern of racial discrimination which the proof showed had any present discriminatory effect.).

Testimony of tenants not parties to the lawsuit are still relevant. This testimony is unquestionably admissible, even if they are not parties, since testimony shows that Defendant's "operations as whole" was conducted in a discriminatory fashion.

## V.   FAMILIAL STATUS NEED NOT BE THE ONLY REASON FOR DEFENDANT'S ACTIONS

A violation of the Fair Housing Act occurs even if familial status was only one of the factors considered by the Defendant when it acted against plaintiffs.  It need not be the sole motivating factor.

A prima facie case of housing discrimination alleging intentional discrimination based on familial status requires plaintiff to show that familial status was a motivating factor, though not necessarily the sole motivating factor, in allegedly violative action. *U.S. v. Branella*, D.N.J.1997, 972 F.Supp. 294 (USDC New Jersey 1997).

Under a 42 U.S.C. 3604 claim, a Plaintiff is not required to prove the landlord's "motivation" for acting as he did.  A violation of the Fair Housing Act may be established by showing that the challenged actions were either (I) motivated by intentional discrimination or (ii) resulted in a discriminatory effect, even absent evidence of a discriminatory motive. *Doe v. City of Butler, Pennsylvania*, 892 F.2d 315, 323 (3d Cir. 1989); Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 142 (3d Cir. 1977) (same); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995) (same)In *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032.

In *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261(11th Cir.), in a familial status discrimination case, the court approved of the following interrogatory to the jury:

"Did Plaintiff prove by a preponderance of the evidence that a motivating factor in the decision by

1   [Defendants] to terminate her lease was sex and/or her family status?"

2

3   Simply put, a showing that a defendant has lied about the reasons for his acts -- that he had a

4   "dishonest belief" in the reasons -- can be strong evidence that a defendant has acted with discriminatory

5   intent. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2108, 147 L. Ed. 2d

6   105 (2000) ("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the

7   explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is

8   consistent with the general principle of evidence law that the factfinder is entitled to consider a party's

9   dishonesty about a material fact as 'affirmative evidence of guilt.'"); *St. Mary's Honor Center v. Hicks*, 509

10  U.S. 502, 113 S. Ct. 2742, 2749, 125 L. Ed. 2d 407 (1993) ("The factfinder's disbelief of the reasons put

11  forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may,

12  together with the elements of the prima facie case, suffice to show intentional discrimination. Thus,

13  rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of

14  intentional discrimination . . . .").

15

16  Dated:                                          LAW OFFICES OF CRAIG P. FAGAN

17

18                                                  By: **/s/Craig P. Fagan**
                                                    Craig P. Fagan
19                                                  Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

TRIAL BRIEF                                                        12